**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**IVAN G. MYERS**                                                          **PLAINTIFF**

**VERSUS**                                      **CIVIL ACTION NO. 5:09cv121-DCB-JMR**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY**                          **DEFENDANT**

<u>**REPORT AND RECOMMENDATION**</u>

This cause comes before this Court on Plaintiff's Motion [10-1] for Summary Judgment as well as Defendant's Motion [13-1] for an Order Affirming the Commissioner's Final Decision. Both Motions are accompanied by Memorandums [11-1; 14-1 ] in Support. Plaintiff has also filed a Rebuttal [15-1] to Defendant's motion, to which Defendant has filed a Reply [16-1]. Having considered the Motions [10-1; 13-1], the Memorandums in Support [11-1; 14-1], Plaintiff's Rebuttal [15-1], Defendant's Reply [16-1], the record of proceedings below, along with the record as a whole and the relevant law, this Court finds that Plaintiff's Motion [10-1] for Summary Judgment should be granted in part and denied in part. The Court further finds that Defendant's Motion [13-1] for an Order Affirming the Commissioner's Final Decision should be granted in part and denied in part, and the case be remanded consistent with the opinion.

<u>**ADMINISTRATIVE PROCEEDINGS**</u>

On January 24, 2005, Plaintiff applied for a period of disability and disability insurance benefits ("DIB"). (Transcript of the Administrative Record, hereinafter "Tr.," 27, 47-49.) In his application, Plaintiff claimed he had been unable to work since September 7, 2003. (Tr. 27). Plaintiff's claim was denied initially and on reconsideration. (Tr. 29-33, 34-36.) Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 37.) On March 28, 2006,

Plaintiff appeared with a non-attorney representative and testified at a hearing before the ALJ. (Tr. [8-1] 5-38.)   A Vocational Expert ("VE") also offered testimony at the hearing. *Id.*   The ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. [6-2] 204-212.)   On March 5, 2007, the Appeals Council remanded the case to the ALJ instructing him to perform an adequate evaluation of Plaintiff's treating source opinion, Plaintiff's subjective complaints, and vocational expert testimony. (Tr. 213-215.)   On October 11, 2007, the ALJ conducted another hearing. (Tr. 389-431.)   On February 8, 2008, the ALJ issued a new decision and again determined that Plaintiff was not disabled. (Tr. 21-26.)   The ALJ found that Plaintiff's impairments of type II diabetes mellitus, arthritis, and depression were not severe. *Id.*   On May 29, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thus making the determination the "final decision" of the Commissioner. (Tr. 10-13.)   On July 24, 2009, Plaintiff filed the instant action for judicial review pursuant to 42 U.S.C. § 405(g) of the Social Security Act. (*See* Compl. [1-1].)

## FACTS

Plaintiff was fifty (50) years old when the ALJ denied his application for benefits. (Tr. 47, 21-26.)   He has a high school education and was previously employed as a welder. (Tr. 62-63, 67, 398-341.)   Plaintiff alleges that he became disabled in September 2003, and is presently disabled as a result of arthritis, diabetes, depression and anxiety. (*See* Pl.'s Br. [11-1].)

## A.  Physical Impairments

The earliest medical evidence found in the record reveals that Plaintiff received treatment in 2005 for anal fissures and elevated blood sugar. (Tr. 109-114.)   Plaintiff also received treatment for kidney stones from his primary care physician Dr. Susan Chiarito in 2005. (Tr. 134-144.)

On January 11, 2006, Dr. Roy M. Barnes, who has treated Plaintiff since 1987 for various

matters, completed a "Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment" check-the-box questionnaire for Plaintiff. (Tr. 145-50, 171-75.) Dr. Barnes opined that Plaintiff was not capable of performing full-time sedentary or light work, even if he had the freedom to alternate sitting and standing during the work day. (Tr. 145-46.) He further opined that Plaintiff had moderately severe limitations in his ability to maintain attention and concentration for extended periods and in his ability to perform activities within a schedule and maintain regular attendance. (Tr. 147.) Dr. Barnes indicated that Plaintiff was limited in his ability to reach in all directions and twist his body. (Tr. 148.) Dr. Barnes also opined that Plaintiff could only lift and carry twenty pounds occasionally and ten pounds frequently. (Tr. 148.) He also noted that Plaintiff could finger frequently, but grasp/grip and feel only occasionally. *Id.* Dr. Barnes further indicated that Plaintiff's temperament was best suited for work that required contact with supervisors only, and that he could tolerate only a quiet workplace. (Tr. 148.) He stated that Plaintiff exhibited diabetes mellitus with neuropathy. (Tr. 150.) Dr. Barnes further stated that Plaintiff was diagnosed with arthritis in 1993 by Dr. Suthin Songcharoen, an arthritis specialist, and diabetes in 2005. (Tr. 150, 171.)

On May 3, 2006, Dr. Jose Ferrer conducted a consultative physical examination of Plaintiff. (Tr. 152-157.) Dr. Ferrer noted that Plaintiff claimed he cannot work because of aches and pains. (Tr. 152.) Dr. Ferrer also noted that Plaintiff has a history of diabetes and takes several medications. *Id.* After completing the examination, Dr. Ferrer found Plaintiff to have a "limited range of motion of the cervical spine, mainly because of pain to a minimal degree." *Id.* He further noted minimal point tenderness and minimal spasms in the posterior cervical area. *Id.* Dr. Ferrer found that Plaintiff had full range of motion of the lumbar spine, shoulders, elbows, wrists, forearms, finger joints, hips, knees, ankles, and foot joints. *Id.* Also, Dr. Ferrer found that Plaintiff was able to walk without a

limp or assistive device, and is able to walk on the toes, on the heels and squat without difficulty. *Id.* The neurological examination of the upper and lower extremities was normal. *Id.* Also, Dr. Ferrer found the x-rays of Plaintiff's cervical spine, shoulders, and lumbar spine to be normal. *Id.* Dr. Ferrer concluded that Plaintiff had no impairment of the body as a whole or in part, and that he should be able to return to full-duty work without restrictions. *Id.*

On June 6, 2006, Plaintiff's primary care physician, Dr. Susan Chiarito, completed a medical source statement questionnaire identical to the one Dr. Barnes filled out in January 2006, with the same results. (Tr. 127-132.) Dr. Chiarito opined that Plaintiff was not capable of performing full-time sedentary or light work, even if he had the freedom to alternate sitting and standing during the work day. (Tr. 127-28.) Dr. Chiarito further opined that Plaintiff had moderately severe limitations in his ability to maintain attention and concentration for extended periods and in his ability to perform activities within a schedule and maintain regular attendance. (Tr. 129.) She indicated that Plaintiff was limited in his ability to reach in all directions and twist his body in work activity. (Tr. 130.) Dr. Chiarito opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently. *Id.* She indicated that Plaintiff could finger frequently, but grasp/grip and feel only occasionally. *Id.* Dr. Chiarito further indicated that Plaintiff's temperament was best suited for work that required contact with supervisors only, and that he could tolerate only a quiet workplace. *Id.* She stated that Plaintiff had exhibited diabetes mellitus with neuropathy. (Tr. 132.) Dr. Chiarito further stated that Plaintiff was diagnosed with arthritis in 1993 and has had periods of exacerbation to the point of immobility. *Id.* She also noted that diet and weight control have stabilized Plaintiff's diabetes. *Id.*

On August 14, 2006, Dr. Roy Barnes wrote a letter "To Whom It May Concern," stating that he had treated Plaintiff in intervals since 1987. (Tr. 171.) Dr. Barnes stated in the letter that Plaintiff

was diagnosed with degenerative arthritis in 1993 by Dr. Songchareon, an arthritic specialist, and was advised to apply for disability at that time. *Id.* Dr. Barnes also stated that Plaintiff has required aggressive treatment for his degenerative arthritis at times in the past. *Id.* Dr. Barnes claims that Plaintiff's problems have intensified in the past two-to-five years, and that he needs financial help because the problems prevent him from performing skills that require many hours of performance. *Id.*

Dr. Songcharoen wrote a letter "To Whom It May Concern" on December 29, 2006, indicating that she had evaluated Plaintiff on December 21, 2006. (Tr. 176.) Dr. Songcharoen stated that Plaintiff had multiple areas of tenderness but no synovitis on physical examination. *Id.* Dr. Songcharoen did not obtain x-rays, but noted the prominence of the distal interphalangeal joints (DIPs) and proximal interphalangeal joints (PIPs) of the hands was suggestive of osteoarthritis. *Id.*

In October 2006, Plaintiff's primary care physician, Dr. Chiarito, prescribed Ultram[1] and Lorcet for pain, and she recorded blood sugar readings. (Tr. 183.) On January 8, 2007, Dr. Chiarito noted that Plaintiff's diabetes was stable, but that he was having psychological problems. (Tr. 181.) She noted that Plaintiff complained of episodes of anger in the evenings, and indicated that he wants to hurt himself or others. *Id.* She increased Plaintiff's prescription of Prozac.[2] *Id.* In April 2007, Dr. Chiarito treated Plaintiff for kidney stones. (Tr. 182.)

In June 2007, Dr. Barnes submitted a letter "To Whom It May Concern" identical to his previous August 2006 letter. (Tr. 171, 247.) On July 6, 2007, Dr. Chiarito wrote a letter "To Whom It May Concern" indicating that she had treated Plaintiff since 1999. (Tr. 254-255.) She noted that

---

[1]Ultram is indicated for the management of moderate to moderately-severe pain in adults. *See* Physicians' Desk Reference 2495 (58th ed. 2004) (PDR).

[2]Prozac is indicated for the treatment of major depressive disorder. *See* PDR, *supra*, at 1841.

Plaintiff had not received routine treatment due to his lack of insurance coverage. *Id.*  Dr. Chiarito noted that Plaintiff was diagnosed with diabetes mellitus in 2004 and prevented complications by following a very strict diet and exercise routine in conjunction with medications. *Id.*  She stated that Plaintiff had experienced "flare-ups" in his arthritis several times in the past, but did not receive treatment each time due to his finances. *Id.*  She noted that she had not done any repeat work-up or other x-ray evaluation of Plaintiff's arthritis due to the cost. *Id.*  Dr. Chiarito opined that Plaintiff's health would greatly improve if a complete rheumatologic evaluation were done. *Id.*  She stated that Plaintiff's chronic pain and intermittent polyarthritis pain had caused him to become clinically depressed, but that he had stabilized with medications and routine counseling. *Id.*

Dr. Lamar McMillin conducted a consultative examination of Plaintiff on November 28, 2007. (Tr. 257-259.)  He observed that Plaintiff seemed somewhat stiff with his ambulation and activity in both upper and lower extremities, and that he was "a little bit slow due to stiffness." (Tr. 257.)  Dr. McMillin noted that Plaintiff had discomfort in his shoulders when trying to raise his hands above his head. (Tr. 258.)  Plaintiff had full range of motion in his back with some subjective pain. *Id.*  Straight leg raising was possible to eighty (80) degrees. *Id.*  Plaintiff had full range of motion of both knees, normal coordination, normal finger and hand dexterity, and full strength in his upper and lower extremities. *Id.*  Dr. McMillin noted that Plaintiff was able to stand on one foot moderately well, but was mildly unstable. *Id.*  Plaintiff reported subjective discomfort in his knees and ankles. *Id.*  Also, Dr. McMillin observed that Plaintiff ambulates fairly well. (Tr. 259.)  He opined that Plaintiff probably would have difficulty returning to work that requires much physical activity due to subjective joint pain. *Id.*

That same day, Dr. McMillin also completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" questionnaire. (Tr. 265-71.)  He opined that Plaintiff could lift

up to fifty (50) pounds occasionally and could carry up to twenty (20) occasionally, due to his stiff joints. (Tr. 265.)  He further opined that Plaintiff could sit for thirty (30) minutes at a time and six (6) hours total, stand for fifteen (15) minutes at a time and one (1) hour total, and walk for fifteen (15) minutes at a time and one (1) hour total. (Tr. 266.)  He noted that Plaintiff required the use of a cane to ambulate, but that it was not medically necessary. *Id.*  In the use of his hands, Dr. McMillin opined that Plaintiff could feel continuously, that he could reach, handle, finger, and push/pull occasionally, but he could never reach overhead. (Tr. 267.)  Dr. McMillin further opined that he could operate foot controls only occasionally. *Id.*  It was also his opinion that Plaintiff could balance and climb stairs and ramps occasionally, but never could climb ladders or scaffolds, stoop, kneel, crouch or crawl, due to reported knee, shoulder and low back pain. (Tr. 268.)  Dr. McMillin opined that Plaintiff could perform all activities of daily living. (Tr. 270.)

## B.  Mental Impairments

On January 9, 2007, Plaintiff underwent an intake assessment with a therapist at Warren-Yazoo Mental Health Services. (Tr. 201-203.)  Plaintiff reported a history of depression "off and on" for the last fifteen (15) years, with intensified symptoms for the past two (2) years. (Tr. 201.)  Plaintiff also reported suicidal ideation with no intent to harm and a loss of interest in everyday activities. *Id.*  Plaintiff informed the therapist that he was taking anti-depressants. *Id.*  The therapist noted that Plaintiff's speech, behavior, appearance, affect, thought content, and memory were appropriate. (Tr. 203.)  The therapist found Plaintiff's mood to be depressed and his judgment/insight impaired. *Id.*  Plaintiff's condition was diagnosed as severe, recurrent major depressive disorder and he was assessed a Global Assessment of Functioning ("GAF") score of 53.[3]

---

[3] A GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in social or occupational functioning. *See* American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th Ed. 2000).  The GAF is a test used by mental health practitioners with respect to

On January 29, 2007, psychiatrist Dr. Bimal Aujla prescribed Trazodone[4] to Plaintiff to help him sleep. (Tr. 200.)  That same day, Plaintiff reported to his therapist that his mood had improved with increased medication. (Tr. 199.)  On March 5, 2007, Plaintiff reported feelings of fear and frustration about his physical impairments, but he also reported an overall improvement in his mood. (Tr. 198.)  A few weeks later, Dr. Aujla noted that Plaintiff was satisfied with his current medication, however, Plaintiff reported "marked functional limitations, secondary to anxiety and chronic pain." (Tr. 197.)  Dr. Aujla diagnosed Plaintiff with major depressive disorder, recurrent type and anxiety disorder, not otherwise specified. *Id.*

Plaintiff reported to his therapist on May 23, 2007, increased feelings of depression and anxiety. (Tr. 196.)  On June 25, 2007, Plaintiff reported to psychiatrist Dr. Gurdial Sandhu that his medications were working well and helping with depression. (Tr. 380.)  In July 2007, Plaintiff reported to Dr. Aujla that he was satisfied with his response to Prozac and Trazodone. (Tr. 379.)  Dr. Chiarito's July 6, 2007 letter noted that Plaintiff had become clinically depressed due to chronic pain and that he needed to remain medicated due to his fragile mental state, but she noted that Plaintiff no longer demonstrated suicidal tendencies. (Tr. 254-55.)  Plaintiff testified before the ALJ on October 11, 2007, that he is being treated for depression and anxiety and that he is taking a number of prescribed medications. (Tr. 416-17.)  On October 29, 2007, Plaintiff reported to psychiatrist Dr. Swati Ellendula that he was feeling depressed a lot and having auditory hallucinations. (Tr. 378.)  Plaintiff also reported that Prozac was helping, but not enough. *Id.*  Dr. Ellendula increased

planning treatment and tracking the clinical progress of an individual in global terms, the ALJ is not bound to consider its results at the exclusion of other medically reliable evidence.

[4]Trazodone is indicated for the treatment of depression. *See* RxList, "Desyrel, Indications & Dosage," http://www.rxlist.com/desyrel-drug.htm (last visited Nov. 12, 2010).

Plaintiff's Prozac dosage and prescribed Geodon.[5]

During Dr. McMillian's examination of Plaintiff on November 28, 2007, he noted that Plaintiff "seems to have a psychiatric problem" that is being treated with fairly good results and he considered depression as one of Plaintiff's major problems. (Tr. 257-259.)  Dr. McMillian opined that Plaintiff needs to continue his anti-depressant medication but that he is "mentally capable and competent on managing his own affairs." *Id.*  On November 30, 2007, Plaintiff reported to Dr. Ellendula that the increased Prozac dosage had not helped with his depression, though he was sleeping well and not having any hallucinations. (Tr. 377.)  Dr. Ellendula decreased Plaintiff's Prozac prescription and prescribed Paxil.[6] *Id.*  In December 2007, Plaintiff reported less anger outbursts but some auditory hallucinations. (Tr. 376.)  Dr. Ellendula increased Plaintiff's dosages of Paxil and Geodon. *Id.*  On January 23, 2008, Plaintiff reported that Paxil is helping with his mood overall, that he feels better and is sleeping good. (Tr. 375.)  Plaintiff denied having any hallucinations. *Id.*  In April 2008, Plaintiff stated that he was having "ups and downs in his mood" and that he was having difficulty sleeping some nights. (Tr. 374.)  Dr. Ellendula increased Plaintiff's dosages of Trazodone and Geodon. *Id.*  In June 2008, Plaintiff's sleep and mood were good, but he reported a side effect of teeth clenching. (Tr. 373.)  Dr. Ellendula prescribed Cogentin.[7]

On July 3, 2008, Plaintiff reported that his teeth clenching had improved, but that the Cogentin had caused his mouth to become very dry to the point that he was having difficulty swallowing. (Tr. 372.)  Dr. Ellendula discontinued Trazodone, Geodon, and Cogentin, and

---

[5] Geodon is indicated for the treatment of schizophrenia. *See* PDR, *supra*, at 2598.

[6] Paxil is indicated for the treatment of, among other things, major depressive disorder and panic disorder. *See* PDR, *supra*, at 1584.

[7] Cogentin is indicated as an adjunct in the therapy of all forms of parkinsonism. *See* RxList, "Cogentin, Indications & Dosage," http://www.rxlist.com/cogentin-drug.htm (last visited Oct. 27, 2010).

prescribed Seroquel.[8] *Id.*   A week later, Plaintiff reported at an urgent visit that Seroquel was preventing him from sleeping at night, that he was unable to sleep and in a bad mood. (Tr. 371.)  Dr. Ellendula discontinued Seroquel and prescribed Trazodone and Abilify.[9] *Id.*   On June 31, 2008, Plaintiff reported that his depression and anxiety were improving a lot. (Tr. 370.)  Dr. Ellendula increased his dosage of Abilify. *Id.*

On August 26, 2008, Plaintiff reported that Ability was working well and his sleep and mood were good; Dr. Ellendula increased Plaintiff's dosage of Ability per his request. (Tr. 369.)   In September 2008, Plaintiff reported that he was feeling better but continued teeth clenching, which he attributed to Paxil. (Tr. 368.)  Dr. Ellendula decreased his dosage of Paxil and increased his dosage of Trazodone; also, Plaintiff obtained a prescription for Celexa.[10] (Tr. 367-68.)  In October 2008, Plaintiff reported feeling better with Celexa, but stated that he continued to have some episodes with depression. (Tr. 367.)  Dr. Ellendula increased his prescription of Celexa. *Id.*   On November 24, 2008, Plaintiff reported that Celexa was not helping him with his depression. (Tr. 366.)  Dr. Ellendula prescribed Remeron.[11]

At the initial hearing before the ALJ, Plaintiff testified that he stopped working in September 2003 because of arthritis and back pain. (Tr. [8-1] 11-12.)  Plaintiff also testified that he was diagnosed with diabetes and had to alter his diet, exercise, and take medication. (Tr. [8-1] 13.)  Plaintiff stated that he walks two (2) to three (3) miles a day, but it takes four (4) hours to do so

---

[8]Seroquel is indicated for the treatment of schizophrenia. *See* <u>PDR</u>, *supra*, at 686.

[9]Abilify is indicated for the treatment of major depressive disorder. *See* RxList, "Ability, Indications & Dosage," <u>http://www.rxlist.com/abilify-drug.htm</u> (last visited Oct. 27, 2010).

[10]Celexa is indicated for the treatment of depression. *See* <u>PDR</u>, *supra*, at 1293.

[11]Remeron is indicated for the treatment of major depressive disorder. *See* <u>PDR</u>, *supra*, at 2390.

because he typically only walks fifteen (15) minutes at a time. (Tr. [8-1] 14-15.)  He also testified that he can barely move his hands or close his fingers in the winter because of the cold weather, and he claims his fingers are starting to become crooked. (Tr. [8-1] 18-19.)  Plaintiff also noted that he experiences headaches four to five times per week, especially when trying to concentrate or when exposed to bright sunlight. (Tr. [8-1] 21-22.)  At the hearing held on October 11, 2007, Plaintiff testified that he was diagnosed with arthritis in 1993, and he reported that his worst problems are with arthritis, joint pain, and diabetes. (Tr. 401-403.)  Plaintiff also testified that he has issues with his anal fistula, vision problems, and depression. (Tr. 403.)  Plaintiff stated that his joints hurt with activity and the arthritis affects his hands, wrists, elbows, shoulders, back, knees, ankles, toes, fingers, and neck. (Tr. 404.)  Plaintiff testified that his diabetes causes him to be weak, dizzy, and get the shakes. (Tr. 407.)

## STANDARD OF REVIEW

On review, the ALJ's determination that a claimant is not disabled will be upheld if the findings of fact upon which it is based are supported by substantial evidence on the record as a whole, and it was reached through the application of proper legal standards.  42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  The United States Supreme Court defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," being "more than a scintilla, but less than a preponderance."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

All evidentiary conflicts are resolved by the Commissioner, and if substantial evidence is found to support the decision, then the decision is conclusive and must be affirmed, even if there is evidence on the other side.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  On appeal, the court may not re-weigh the evidence, try the case *de novo*, nor substitute its own judgment for that

of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence preponderates against the decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## ANALYSIS

At the first step of the sequential evaluation, the ALJ found that Plaintiff had not engaged in any substantial gainful employment since September 7, 2003. (Tr. 21-26.)  At step two, the ALJ determined that Plaintiff had the medically-determinable impairments of type II diabetes mellitus, arthritis, and depression. (Tr. 23-26.)  However, the ALJ found that these impairments were not severe. *Id.*  Thus, the ALJ concluded that Plaintiff was not disabled. (Tr. 26.)

Plaintiff argues that the ALJ's decision is not supported by substantial evidence, and that the ALJ should have found that Plaintiff's impairments were severe. (Pl.'s Mem. [11-1] 10-15.) Specifically, Plaintiff argues that the ALJ erred by not adequately weighing the opinions of Plaintiff's treating physicians and consultative physicians. *Id.*  Plaintiff argues that the ALJ failed to comply with 20 C.F.R. § 404.1527(d)[12] in rejecting the opinions of his treating and consultative physicians. *Id.* Lastly, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's mental impairments by not analyzing them under the required Psychiatric Review Technique established in 20 C.F.R. 404.1520a. (Pl.'s Mem. [11-1] 14.)

## A.  Physical Impairments

As to Plaintiff's first claim, he argues that the ALJ erred in giving no weight to the medical opinions of his treating physicians, Dr. Chiarito and Dr. Barnes, and his consultative physician Dr. McMillin. (Pl.'s Mem. [11-1] 10-15.)  The Court notes that an ALJ is required to review the medical evidence and consider the various medical opinions contained in the record.  Medical opinions are statements from an acceptable medical source about the nature and severity of an individual's

---

[12] 20 C.F.R. 416.927(d) is the SSI concurrent of 20 C.F.R. 404.1527(d).

impairments.  Defendant argues that a statement that an individual is disabled or cannot work is not a medical opinion, and an ALJ is not bound to accept such a statement, regardless of the source.  In fact, such matters are reserved for the Commissioner to decide.  *See* 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).

The Commissioner's regulations and rulings provide that the opinion of a treating physician is to be given controlling weight when it is an actual opinion from a treating source that is well supported by clinical findings and is consistent with the record as a whole.  *See* 20 C.F.R. §§ 404.1527, *Social Security Ruling* (SSR) 96-2p.  The Fifth Circuit has held that the opinions of a treating physician should be afforded substantial weight, unless there exists good cause not to do so.  Recognized good cause exceptions include opinions not supported by laboratory or clinical findings, brief conclusory statements, or opinions not otherwise supported by the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994).  However, even if given full weight, a physician's opinion is not controlling on the issue of whether an individual is able to work. *Martinez v. Chater*, 64 F.3d 172, 176-176 (5th  Cir. 1995).

Plaintiff complains that the ALJ should not have given consultative physician Dr. Ferrer's opinion more weight than the opinions of treating physicians Dr. Barnes and Dr. Chiarito and of consultative physician Dr. McMillin. (Pl.'s Mem. [11-1] 11-13.)  Plaintiff avers that the ALJ should have considered the factors under 20 C.F.R. §  404.1527 in weighing the medical opinions. *Id.* at 12.

Ordinarily, a treating physician's opinion on the issues of the nature and severity of impairment is entitled to controlling weight, provided that the opinion is well supported by medical evidence and not inconsistent with other substantial evidence. 20 C.F.R. §§ 416.927(d)(2).  Accordingly an ALJ must take the following factors into consideration when determining the weight to be given to the opinions of a treating physician: (1) length of treatment, (2) frequency of

examination, (3) nature and extent of relationship, (4) support provided by other evidence, (5) consistency of opinion with record, and (6) specialization. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *see also* 20 C.F.R. § 416.927(d)(2)(i)-(ii), (3)-(6).

However, "[w]hen good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions... include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Greenspan*, 38 F.3d at 237; *see also* 20 C.F.R. § 416.927(d)(2).  The ALJ is entitled to determine the credibility of all witnesses, including medical experts, and weigh their opinion accordingly. *Greenspan*, 38 F.3d at 237; *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  The opinion of a treating physician "may be assigned little or no weight when good cause is shown.  Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000) (citation omitted); *see also Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (in determining whether to give a treating physician's opinion controlling weight, the ALJ must look to whether the opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with... other substantial evidence'" (quoting 20 C.F.R. § 404.1527(d)(2))).  "[A]lthough the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (quotation omitted).

The ALJ found that Plaintiff had the medically determinable impairments of type II diabetes

mellitus, arthritis, and depression. (Tr. 23.)  However, in considering the medical evidence of record

and reciting the Fifth Circuit's standard in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the ALJ

found that Plaintiff's impairments were "only slight abnormalities having such a minimal effect that

they would not be expected to interfere with [his] ability to work irrespective of age, education and

work experience." (Tr. 25.)   Therefore, the ALJ held that Plaintiff did not have any severe

impairments and, thus, was not disabled. *Id.*   The ALJ rejected the opinions of Dr. Barnes, Dr.

Chiarito, and Dr. McMillin, and gave significant weight to Dr. Ferrer's opinion. (Tr. 25-26.)   In

rejecting Dr. Chiarito's opinion, the ALJ noted that she "relied solely on [Plaintiff's] complaints and

his reports of what other physicians may have done or said which is not of record." *Id.* at 26.  Also,

the ALJ noted that her opinion was not supported by her own record of treatment. *Id.*   The ALJ

rejected Dr. Barnes' opinion by noting that the most recent treatment notes from him were in July

2004 and that "[n]o recent updated physical findings or diagnostic studies were included with his

opinions." *Id.*   In rejecting Dr. McMillin's opinion, the ALJ found that his opinion was based on

Plaintiff's statements rather than clinical findings, and that his physical examination was "essentially

normal as well as the x-rays of [Plaintiff's] knees and wrists. *Id.*

     Plaintiff argues that Dr. Chiarito's records include lab results and a blood sugar log showing

elevated blood glucose levels. (*See* Pl.'s Reply [15-1] 4.)  The Court notes that Dr. Chiarito's records

do contain lab results showing elevated blood sugar levels for two days. (Tr. 110, 113.)  On January

24, 2005, Plaintiff's blood sugar level was recorded at 360 and on January 28, 2005 it was recorded

at 308. *Id.*  Also, Dr. Chiarito's notes contain what appears to be a handwritten blood sugar log

documenting blood sugar levels ranging from 305 to 495 for a five day period, January 20 to 24,

2004. (Tr. 111.)  However, Plaintiff has failed to cite any laboratory diagnostic techniques used that

would objectively support the functional limitations depicted in Dr. Chiarito's opinion.  The court

further notes that Dr. Chiarito's treatment notes and lab results reflect that Plaintiff's diabetes was stabilized with diet, exercise and medication, and recent lab results showed Plaintiff to have "great," average blood sugar in the non-diabetic levels. (Tr. 181, 183, 189, 191, 254.)  Furthermore, Dr. Chiarito admits that she has not seen Plaintiff on a routine regular basis and that she has not done an arthritis workup or x-ray evaluation, which she claims is due to Plaintiff's financial situation. (Tr. 254.)

Plaintiff also asks the Court to assume that Dr. Sangcharoen, an arthritis specialist, conducted objective clinical and laboratory diagnostic tests in which the results support Plaintiff's alleged functional limitations, that those results were provided to Dr. Barnes, and that Dr. Barnes based his opinion, in part, on those findings. (Pl.'s Reply [15-1] 4-5.)  However, these alleged objective findings are not a part of the record that was presented to the ALJ, nor to this Court.  The Court notes that the only evidence contained in the record from Dr. Songcharoen is a letter from her dated December 29, 2006. (Tr. 176.) Dr. Songcharoen states that she conducted a physical exam of Plaintiff on December 21, 2006, however, she notes that she did not obtain lab tests or x-rays. *Id.*  She states that Plaintiff had multiple areas of tenderness, but there were no areas of synovitis found.  *Id.*  Dr. Songcharoen did observe prominence of joints in Plaintiff's hands that were "suggestive of osteoarthritis," but she did not opine any functional limitation with this observation. *Id.*  The Court also notes that no objective tests or techniques could be discerned from Dr. Barnes' treatment notes, only subjective complaints of pain from Plaintiff. (Tr. 173-75.) Furthermore, as Defendant points out, Dr. Barnes signed his opinion concerning Plaintiff's alleged disabling condition on January 11, 2006, however, Dr. Barnes' treatment notes reveal that he had not examined or treated Plaintiff since July 2004. *Id.*  Recent x-rays show Plaintiff's knees and wrists to be normal, with the exception of "mild narrowing of the radiocarpal joint space" in his right wrist but no soft tissue abnormalities were seen.

(Tr. 261-64.)

Plaintiff further argues that Dr. McMillin's findings support the opinions of Dr. Chiarito and Dr. Barnes. (Pl.'s Reply [15-1] 7-8.)  Dr. McMillin conducted a consultative exam on Plaintiff on November 28, 2007, and in his own words found Plaintiff's "exam [to be] relatively normal." (Tr. 259.)  He found Plaintiff to be "a little bit slow due to stiffness." *Id.* at 257.  However, even though Plaintiff reported subjective pain and discomfort in his back, shoulders, knees and ankles, Dr. McMillin noted that Plaintiff had full range of motion in his back, both knees, normal coordination, normal finger and hand dexterity, and full strength in his upper and lower extremities. *Id.* at 258.  He noted that Plaintiff's fingers and hands "look[ed] fairly normal" and had full strength, but noted that there may be a slight hypertrophy in the hands. *Id.* at 259.  Dr. McMillin also found that Plaintiff does not have any "varicose veins, no brawny skin changes, [and] no edema in the lower extremities," and that he functions well with his ambulation. *Id.*  He observed that Plaintiff did not require the use of a walking assistive device and noted that "stiff joints" seem to be Plaintiff's major problem, but he also noted that the more Plaintiff walks the better he does. *Id.* at 258-59.  Dr. McMillin opined that Plaintiff will probably have difficulty returning to the work force that requires much physical activity due to his subjective back pain. *Id.* at 259.  The Court notes that by Dr. McMillin's admission, his opinion of Plaintiff's physical limitations are due to Plaintiff's subjective complaints of pain and discomfort. (Tr. 259, 265-70.)

The ALJ found that Plaintiff was impaired by his type II diabetes mellitus, arthritis, and depression, however, these conditions do not translate to the functional limitations depicted by Dr. Chiarito, Dr. Barnes, and Dr. McMillin. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). The mere presence of some impairment is not disabling per se.  Plaintiff must show that he was so functionally impaired by his diabetes, arthritis and/or depression that he was precluded from engaging

in any substantial gainful activity. *Id.* (citing *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979)). In the absence of objective medical evidence indicating that Plaintiff suffered disabling diabetes, arthritis or depression, Plaintiff fails to meet his burden of proving disability.  *Id.*  Plaintiff has not pointed to any objective findings in Dr. McMillin's, Dr. Barnes' or Dr. Chiarito's notes, or in the record as a whole, that support the functional limitations limned by said doctors.  In fact, Plaintiff's medical record reveals that his diabetes is well controlled with his blood sugar on average in the non-diabetic levels and that he has full range of motion in his joints with only subjective complaints of pain and discomfort. (Tr. 152, 181, 183, 188-92, 254, 257-64.)  The only x-rays contained in the record reflect that Plaintiff's joints are within the normal limits. (Tr. 152, 261-64.)

Dr. Barnes and Dr. Chiarito suggest that Plaintiff can only occasionally grasp, feel with his fingers and lift and/or carry twenty (20) pounds. (Tr. 130, 148.)  They also suggest that Plaintiff can only reach in all directions and twist the body with limited frequency, and they opine that Plaintiff can not perform light or even sedentary work. (Tr. 127-32, 145-50.)  Further, even though Dr. McMillin found Plaintiff's physical examination to be normal, he completed a questionnaire in which he suggests that Plaintiff can never lift above fifty (50) pounds and can never carry more than twenty (20) pounds. (Tr. 265.)  Also, Dr. McMillin opined that Plaintiff can only sit for thirty (30) minutes and stand and walk for fifteen (15) minutes without interruption. (Tr. 266.)  However, as the ALJ surmised, the record reveals that the limitations set forth by Dr. Chiarito, Dr. Barnes, and Dr. McMillin were derived from Plaintiff's own self-report. (Tr. 25-26.)  Dr. McMillin admits throughout his questionnaire, and in his examination, that Plaintiff's limitations are due to his complaints of pain and discomfort. (Tr. 257-59, 265-70.)  With the exception of two lab test showing high blood glucose levels, Plaintiff's lab results reveal that his diabetes is stable in "great," average non-diabetic levels. (Tr. 110, 113, 181, 183, 189-92.) Furthermore, the only lab and x-ray testing contained in the record

showed Plaintiff's joints to be normal and his physical examinations revealed that he had full range of motion with the exception of reaching overhead due to subjective pain. (Tr. 152, 257-64.) Defendant posits, and this Court agrees, that there is no objective evidence in the record that supports the functional limitations set forth by Dr. Chiarito, Dr. Barnes or Dr. McMillin.

Further, the ALJ relied on Dr. Ferrer's physical examination, x-rays, and opinion. (Tr. 24-26.) Upon physical examination, Dr. Ferrer found that Plaintiff had limited range of motion of the cervical spine due to minimal pain, and he noted minimal point tenderness and minimal spasms in the posterior cervical area. (Tr. 152.)  However, Dr. Ferrer further found that Plaintiff had full range of motion of the lumbar spine, full range of motion in his shoulders, elbows, wrists, forearms and finger joints bilaterally, and full range of motion in his hips, knees, ankles and foot joints bilaterally. *Id.*  Dr. Ferrer noted that Plaintiff is able to walk without a limp or assistive device, walk on his toes and heels, and squat without difficulty. *Id.*  Also, the neurologic examination of Plaintiff's upper and lower extremities was within normal limits. *Id.*  Dr. Ferrer also found that the x-rays of Plaintiff's cervical spine, shoulders, and lumbar spine were all within normal limits. *Id.*  Dr. Ferrer concluded that Plaintiff "has no impairment of the body as a whole or in part" and "[h]e should be able to return to work full duty without restrictions." *Id.*

Plaintiff argues that since the ALJ chose not  to accord controlling weight to the opinions of his treating physicians Dr. Barnes and Dr. Chiarito, then he was obligated to detail more exhaustively his reasons for rejecting the opinions pursuant to *Newton v. Apfel*, 209 F.3d 448 (2000) (construing 20 C.F.R. §§ 404.1527(d) and 416.927(d)).  In *Newton*, the Fifth Circuit reversed an ALJ's decision rejecting the opinion of a treating physician without performing an analysis based on the six factors listed in 20 C.F.R. § 404.1527(d)(2). However,   *Newton* is distinguishable. In *Newton*, the ALJ "summarily rejected the opinions of Newton's treating physician, based only on the testimony of a

non-specialty medical expert who had not examined the claimant." *Id.* at 458. *Newton* did not involve "competing first-hand medical evidence," nor did it involve "the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* In the case *sub judice*, competing first-hand medical evidence was present that contradicted Dr. Chiarito's and Dr. Barnes' assessments. That evidence, discussed in detail above, included Dr. Ferrer's examination of Plaintiff, x-rays, medical records indicating that Plaintiff's medication was effective, Dr. Chiarito's treatment notes, and Dr. McMillin's examination. Therefore, this Court can find no error in not crediting Dr. Chiarito's and Dr. Barnes' opinions. *cf. Spellman v. Shalala*, 1 F.3d 357, 364-65 (5th Cir. 1993) (holding that it was proper to reject a treating physician's opinion that the claimant could not perform sedentary work, because the opinion was inconsistent with evidence of the claimant's everyday activities and with medical records).

As the findings expounded *supra* diverge significantly from those of Dr. Chiarito's, Dr. Barnes' and Dr. McMillin's opinions, their opinions are not consistent with the medical evidence as a whole and good cause existed to not afford their opinions controlling weight. Thus, the ALJ's obligation to perform a  detailed analysis of their views, under the criteria set forth in 20 C.F.R. 404.1527(d), was not triggered because reliable medical evidence from treating or examining physicians, which controverted their opinions, is reflected in the record. The determination of a disability is not a medical opinion entitled to deference, but a legal conclusion within the Commissioner's scope of authority. *Frank v. Barnhard*, 326 F.3d 618, 620 (5th Cir. 2003).

Lastly, Plaintiff argues in his Rebuttal [15-1] to Defendant's motion to affirm, that the ALJ should have re-contacted Dr. Chiarito and Dr. Barnes before rejecting their opinions. (Pl.'s Reply [15-1] 5.) However, also citing 20 C.F.R. § 404.1512(e), Defendant maintains that an ALJ is required to re-contact a medical source only when the evidence received from a treating physician is inadequate

to determine whether an individual is disabled.  In cases where there is an incomplete medical history or gaps in medical evidence provided by a treating physician, the ALJ has a duty to contact that physician for additional evidence. *See Newton*, 209 F.3d at 458.  Defendant argues that neither Dr. Barnes' opinion nor Dr. Chiarito's opinion was ambiguous, and there were no gaps in their notes or medical evidence.  Defendant maintains that there were no conflicts in either Dr. Barnes' or Dr. Chiarito's opinions and no necessary missing information; rather, the opinions were unsupported by the physicians' treatment records, which is a proper ground for declining to give an opinion controlling weight.  This Court agrees.  It is important to note the difference between the rejection of an improper opinion, which does not trigger the duty to re-contact, and medical records which are not illuminative of a claimant's condition, which does trigger the duty.  An ALJ is not required to re-contact a treating physician where he simply declines to afford the physician's opinion controlling weight.

## B.  Mental Impairments

Lastly, Plaintiff contends that the ALJ erred in failing to apply the special psychiatric review technique set forth in 20 C.F.R. § 404.1520a in evaluating the severity of his depression and anxiety disorder.  Under this regulation, the ALJ must first evaluate symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b)(1).  If such an impairment exists, the ALJ must rate the degree of functional limitation resulting from the impairment in four categories deemed essential to work: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation. *Id.* at § 404.1520a(c)(3).  After rating the functional limitation resulting from the mental impairment, the ALJ determines whether the impairment is "severe" or "not severe" given the degree of functional loss found in the four enumerated categories. *Id.* at § 404.1520a(d)(1).  Mental

impairments rated as "none" or "mild" in the first three categories and "none" in the fourth category are generally considered "not severe." *Id.* If the impairment is considered "severe," the ALJ must determine whether the impairment meets or is equivalent in severity to a listed mental disorder. *Id.* at § 404.1520a(d)(2). If the claimant has a severe mental impairment that neither meets nor medically equals a listed impairment, the ALJ must assess the claimant's residual functional capacity. *Id.* at § 404.1520a(d)(3).

The regulations also require the ALJ to document application of the psychiatric review technique in his written decision. Specifically:

> [T]he written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include specific finding as to the degree of limitation in each of the functional areas described in [20 C.F.R. § 404.1520a(c)].

20 C.F.R. § 404.1520a(e)(2). Where a non-frivolous claim of mental impairment exists, the ALJ's failure to follow the psychiatric review technique and make the required findings constitutes legal error and requires remand. *Satterwhite v. Barnhard*, 44 Fed. Appx. 652, 2002 WL 1396957 at *2 (5th Cir. 2002); *see also Selassie v. Barnhard*, 203 Fed. Appx. 174, 176, 2006 WL 2990105 at *1 (9th Cir. 2006) (failure to follow the requirements of section 404.1520a requires reversal where the claimant has a "colorable claim of a mental impairment"); *Moore v. Barnhard*, 405 F.3d 1208, 1214 (11th Cir. 2005) (same); *but see Robbers v. Comm'r of Social Security Admin.*, 582 F.3d 647, 657 (6th Cir. 2009) (rejecting *per se* rule requiring remand in any case where ALJ failed to follow section 404.1520a. In the Fifth Circuit, however, an ALJ's failure to complete the psychiatric review technique is a procedural error that does not require remand, provided the error has not affected a party's substantial rights. *McGehee v. Charter*, 83 F.3d 418, 1996 WL 197435, *3 (5th Cir. 1996)

(unpubl.) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1984)).

In the case *sub judice*, the record clearly established that Plaintiff has a medically determinable mental impairment, as the ALJ found. Plaintiff was diagnosed and treated for depression and anxiety by psychiatrists and counselors. However, the ALJ never cited to, discussed, or documented application of the psychiatric review technique in his decision. Nor did the ALJ rate the degree of functional limitation resulting from Plaintiff's depression and anxiety. Such failure to comply with the requirements of section 404.1520a constitutes reversible error and requires remand. *Satterwhite*, 44 Fed. Appx. 652, 2002 WL 1396957 at *2.

Defendant concedes that the ALJ did not specifically address the psychiatric review technique set forth in section 404.1520a, however, he argues that such failure constitutes only harmless error because the resulting disability determination is supported by substantial evidence. (Def.'s Br. [14-1] 15.) Defendant further argues that Plaintiff does not point to any evidence in the record indicating that his mental impairments had any more than a slight effect on his ability to work. (Def.'s Br. [14-1] 17.) The Court disagrees. The record contains conflicting and inconclusive evidence as to whether Plaintiff's mental impairments had no more than a minimal effect on his ability to do basic work functions and, therefore, was not severe. *See Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). In early 2007, psychiatrist Dr. Aujla diagnosed Plaintiff with major depressive disorder, recurrent type and anxiety disorder, and Plaintiff was also assessed a GAF score of 53. (Tr. 197, 201-03.) On March 26, 2007, Plaintiff reported to Dr. Aujla that his marked functional limitations were due to his anxiety and chronic pain. (Tr. 197.) Plaintiff also reported suffering from depression for the last fifteen (15) years, suicidal ideations, auditory hallucinations, and a loss of interest in everyday activities. (Tr. 201-03, 378.) On July 6, 2007, Dr. Chiarito noted that Plaintiff had become "clinically depressed." (Tr. 255.) Furthermore, Dr. Chiarito and Dr. Barnes both opined that Plaintiff had a moderate severe

limitation in the ability to maintain attention and concentration for extended periods. (Tr. 129, 147.) They also opined that Plaintiff had a moderate severe limitation in his ability to perform activities within a schedule, maintain regular attendance and be punctual. *Id.* Throughout 2007 and 2008, Plaintiff was treated by psychiatrists and counselors for depression and anxiety, and he was prescribed numerous anti-depressant medications. (Tr. 196-203, 366-81.) The most recent treatment notes from psychiatrist Dr. Ellendula reveal that on November 24, 2008 Plaintiff's depression was worsening due to stress relating to his disability claim and the IRS. (Tr. 366.) In view of the inconclusive and conflicting evidence regarding the severity of Plaintiff's mental impairments, the Court cannot conclude that the ALJ's failure to follow the requirements of section 404.1520a was harmless. *See Satterwhite*, 44 Fed. Appx. 652, 2002 WL 1396957 at *2.

## <u>RECOMMENDATION</u>

The court has fully reviewed the entire record on this matter and finds that the Commissioner did not err as a matter of law in reaching the "final decision" in this matter with regards to Plaintiff's physical impairments and that the decision is supported by substantial evidence. However, as to Plaintiff's mental impairments, the ALJ's decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.[13] Accordingly, the Court recommends that Plaintiff's Motion [10-1] for Summary Judgment be denied in part and granted in part and Defendant's Motion [13-1] to Affirm the Decision of the Commissioner be granted in part and denied in part. Specifically, the Court recommends that the Commissioner's "final decision" in regards to Plaintiff's physical impairments be affirmed and the Commissioner's decision

---

[13]By remanding this case for further administrative proceedings, the Court does not suggest that Plaintiff is or should be found disabled. The Court expresses no opinion on whether Plaintiff will prevail on the merits of his mental impairments claim; it holds only that the regulations require the ALJ to specifically evaluate these claims and document its findings accordingly.

with regards to Plaintiff's mental impairments be reversed and remanded in order that the Commissioner comply with the requirements of section 404.1520a.

In accordance with the Rules of this Court, any party within fourteen days after being served a copy of this recommendation, may serve and file written objection to the recommendations, with a copy to the Judge, the U.S. Magistrate Judge and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal- unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Services Automobile Association*, 79 F.3d 1425 (5th Cir. 1996).

THIS the   18th   day of November, 2010.

_____s/ John M. Roper, Sr._____
CHIEF UNITED STATES MAGISTRATE JUDGE